UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARFIELD RICHARDS,<br><br>      Plaintiff,<br><br>   v.<br><br>CALIBER AUTO TRANSFER OF ST. LOUIS, INC., CALIBER MANAGEMENT, INC., CALIBER AUTO TRANSFER COMPANIES, *an unincorporated entity acting as a partner*, CALIBER AUTO TRANSFER, INC., and SCOTT DAVENPORT,<br><br>      Defendants. | Case No. 09-cv-561-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion to Remand (Doc. 14). The Defendants have responded (Doc. 19), and Plaintiff has replied (Doc. 22). For the following reasons, the Court **GRANTS** the instant motion (Doc. 14).

### BACKGROUND

**I.   Facts**

In his Complaint (Doc. 2; Exhibit A), Plaintiff Garfield Richards (hereinafter "Richards") asserts numerous claims against Defendants (hereinafter "Caliber"), including breach of contract, fraud, willful and wanton conduct, negligence, and violation of the Illinois Prevailing Wage Act, 820 ILCS 130/0.01 *et seq*. Specifically, Richards argues that Caliber laid off him and his coworkers on the false premise that no work existed, when, in fact, Caliber wanted to replace the workers with cheaper immigrant labor. Richards further argues that he was hired and employed as a union laborer entitled to the protection of a collective bargaining agreement

between Caliber and United Iron Workers Local 396; however, Caliber failed to pay union dues, thereby depriving Richards of union representation.  Finally, Richards contends that Caliber falsely represented that he and his coworkers voluntarily left their employment and/or engaged in misconduct, thereby depriving them of unemployment benefits.  This case was filed originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, and was removed on July 24, 2009, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

## II.     Related Procedural Posture

The Southern District of Illinois has already seen litigation involving the aforementioned claims against Caliber as brought by some of Richards' coworkers, particularly Charles Bourda and Monica Miller.[1]  *See Charles J. Bourda v. Caliber Auto Transfer of St. Louis, Inc., et al.*, Civil No. 09-181-GPM (S.D. Ill. filed Mar. 5, 2009); *Monica Miller v. Caliber Auto Transfer of St. Louis, Inc., et al.*, Civil No. 09-563-DRH (S.D. Ill. filed July 24, 2009).  *Bourda* and *Miller* had been removed for reasons similar to those currently before the Court,[2] and both were remanded by Judge Murphy and Chief Judge Herndon respectively.[3]  Following remand, Caliber

---

[1] The complaints filed by those two plaintiffs are virtually identical in all respects to that filed by Richards.

[2] In fact, Caliber's Notice of Removal (Doc. 2) in the instant case is identical to that filed in *Miller*.  With regard to *Bourda*, the only distinction is reference to a settlement agreement signed on June 10, 2009, wherein the International Association of Bridge, Structural, Ornamental and Reinforcing, Iron Workers, AFL-CIO, Local 518 agreed that Richards had been covered by a collective bargaining act throughout his time at Caliber.  This settlement agreement had not been signed prior to removal in *Bourda*, providing explanation for its absence in the removal notice.  The Court will take up this distinction in its analysis.

[3] While Judge Murphy remanded *Bourda* upon plaintiff's motion, Chief Judge Herndon acted *sua sponte* in remanding *Miller*.

once again removed *Bourda*, only to be met with remand yet again.[4]  *See Charles J. Bourda v. Caliber Auto Transfer of St. Louis, Inc., et al.*, Civil No. 09-519-GPM (S.D. Ill. filed July 10, 2009).

## ANALYSIS

**I.      Removal Generally**

A defendant may remove a case filed in state court to federal court so long as there is original federal jurisdiction over the case.  28 U.S.C. § 1441(a) (2006); *Chase v. Shop 'N Save Warehouse Foods*, 110 F.3d 424, 427 (7th Cir. 1997).  The party invoking the Court's jurisdiction bears the burden of showing that the case is properly brought.  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Del Vecchio v. Conseco, Inc*., 230 F.3d 974, 979 (7th Cir. 2000); *Am. Bankers Life Assur. Co. of Fla. v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003).  Statutes that provide for removal are to be construed narrowly, and any doubts concerning removal should be resolved in favor of remand.  *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).  In other words, there is a strong presumption in favor of remand.  *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).

**II.     "Arising Under" Federal Jurisdiction**

Federal district courts hold "original jurisdiction of all civil matters arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (2006).  A case arises under federal law if it meets the "well-pleaded complaint" rule, whereby federal law appears on the face of a plaintiff's complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The

---

[4]The issue that resulted in *Bourda*'s second remand is not presently before the Court; as such, it need not be discussed here.

policies surrounding this rule are clear: "that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 398-99.

Even if the well-pleaded complaint rule is not met, an action may arise under federal law if the state law at issue is "completely preempted" by federal law. This occurs when "the preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005) (quoting *Caterpillar*, 482 U.S. at 393). Following complete preemption, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law [thereby authorizing removal]." *Nelson*, 422 F.3d at 467. While complete preemption represents a very narrow exception to the well-pleaded complaint rule, the Supreme Court has upheld its application to the Labor Management Relations Act. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559-60 (1968).

## III. The Labor Management Relations Act and Complete Preemption

Here, the issue raised by Caliber in its Notice of Removal (Doc. 2) and Response (Doc. 19) is whether Richards' claims are completely preempted by the Labor Management Relations Act ("LMRA"). Section 301 of the LMRA mandates federal adjudication of all claims - including those ostensibly grounded in state law - that requires substantial interpretation of a collective bargaining agreement for resolution. 29 U.S.C. § 185(a) (2006); *see, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (holding that § 301 completely preempts any

state-law "tort claim . . . inextricably intertwined with consideration of the terms of [a] labor contract"); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962) (recognizing the complete preemptive effect of § 301); *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991) (citing *Lueck*, 471 U.S. at 213) (section 301 completely preempts state-law claims in both contract and tort "so long as the claim is one in which 'state law purports to define the meaning of the contract relationship'" under a collective bargaining agreement (citation omitted)). The rationale behind complete preemption under § 301 is that uniform federal interpretation of the terms of collective bargaining agreements will "promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988); *see also United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 864 (7th Cir. 1998) (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 501 (1957)) (noting that § 301, by authorizing federal courts to fashion a body of federal law with respect to the enforcement of collective bargaining agreements, "ensures uniform interpretation of such labor contracts and promotes peaceable resolution of legitimate labor disputes."). Complete preemption does not mean that a plaintiff is without a remedy; it simply means that the remedy must be sought in federal court under federal law. *See Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1346 (7th Cir. 1986) (stating that where a "worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable . . . that remedy is exclusive; the worker has no state remedies."); *see also Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 789 (7th Cir. 2002) (holding that the existence of a remedy under federal law is an indispensable prerequisite of complete preemption).

Not every dispute concerning employment and/or collective-bargaining agreements will be preempted by § 301. *See Lueck*, 471 U.S. at 211. In *Lueck*, an employee brought a state-law tort claim for bad faith handling of disability benefit payments due under a collective bargaining agreement. The court found complete preemption, holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of [a collective bargaining] agreement . . . , that claim must either be treated as a [§] 301 claim . . . .or dismissed as pre-empted by federal labor-contract law." *Id*. at 220 (citation omitted). However, the *Lueck* court limited its holding by stating that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by [§] 301 or other provisions of the federal labor law." *Id*. at 211. In an effort to "emphasiz[e] the narrow focus of [its] conclusion," the court explained that it did not "hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by [§] 301." *Id*. at 220.

The law laid out in *Lueck* was further fleshed out in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). In *Caterpillar*, the court did not find complete preemption because § 301 only controls "[1] claims founded directly on rights created by collective-bargaining agreements, and . . . [2] claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Id*. at 394 (quoting *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). *Caterpillar* made clear that an employees' right to make claims under preexisting oral contracts was not abrogated because a collective bargaining agreement existed at the time of the layoff. Put another way, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long

6

as the contract relied upon is *not* a collective-bargaining agreement." *Id*. at 396 (emphasis in original); *see also Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 570 (7th Cir. 1989) ("If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by [§] 301.").

In the instant case, Richards' claims do not appear to directly challenge any collective bargaining agreement.[5] The alleged misrepresentations raised in the complaint appear to be quite independent of any collective bargaining agreement, and their resolution will not require interpretation of such an agreement. While Richards does assert a claim of breach of contract and/or breach of the covenant of good faith and fair dealing, such allegations do not appear to derive from any collective bargaining agreement.[6] Rather, the source of said claim appears to be distinct employment agreements. In fact, Richards' Reply (Doc. 22) appears to dispute coverage by any collective bargaining agreement, as discussed *infra*. Accordingly, complete preemption does not apply to this matter, and removal was improper. *See, e.g., Varnum v. Nu-Car Carriers, Inc.*, 804 F.2d 638, 640 (11th Cir. 1986) (holding that alleged misrepresentations regarding seniority did not give rise to complete preemption because they were independent of a collective bargaining agreement); *Anderson v. Ford Motor Co.*, 803 F.2d 953, 957-59 (8th Cir. 1986) (representations regarding layoffs); *Paradis v. United Techs., Pratt & Whitney Div.*, 672 F. Supp. 67, 70 (D. Conn. 1986) (representations regarding termination); *Miller v. Fairchild Indus., Inc.*,

---

[5]Once again, Richards' claims include breach of contract, fraud, willful and wanton conduct, negligence, and violation of the Illinois Prevailing Wage Act, 820 ILCS 130/0.01 *et seq*. However, as an aside, the Court is not aware of a cause of action in Illinois for willful and wanton conduct.

[6]Breach of the covenant of good faith and fair dealing was also alleged by the employees in *Caterpillar*, where such an allegation was found to be a state-law claim and removal was found to be improper. *See Caterpillar*, 482 U.S. at 390 n.3.

7

668 F. Supp. 461, 465-66 (D. Md. 1987) (representations regarding job security).

To the extent that the instant action is distinct from *Bourda*, which was remanded by Judge Murphy, Caliber makes much ado about a settlement agreement reached on June 10, 2009, between Richards' purported union and Caliber.[7] The parties to the settlement agreement stipulated that Richards was covered by a collective bargaining agreement during his employment with Caliber. In his Reply (Doc. 22), Richards states he was not informed of this settlement or any negotiations pertaining thereto and declares the agreement to be "ridiculous," apparently disputing representation by the union and application of the collective bargaining agreement to him. Richards refuses to accept the settlement and has not cashed a $300 check that he received. The Court first notes that, pursuant to *Caterpillar*, the mere existence of a collective bargaining agreement prior to one's termination does not mandate complete preemption. More importantly, as previously mentioned, Richards' claims do not appear to derive from the collective bargaining agreement, which he allegedly never received and knew very little about. Finally, it cannot go unnoticed that the settlement agreement which Caliber touts was negotiated by the International Association of Bridge, Structural, Ornamental and Reinforcing, Iron Workers, AFL-CIO, Local 518, not the United Iron Workers Local 396 that Richards claims owed him representation.

The Court also notes that its holding is in line with general principles regarding removal. Any doubt concerning removal should be construed in Richards' favor, and the Court's hesitation in linking Richards' claims to the terms and conditions of a collective bargaining

---

[7]As aforesaid, the relevant posture of this case is identical to *Miller*, wherein Chief Judge Herndon remanded the matter *sua sponte*.

agreement lend greater credence to remand. Finally, this ruling is consistent with the holdings of Judge Murphy and Chief Judge Herndon, serving to further judicial economy and avoiding the danger of inconsistent orders.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Richards' Motion to Remand (Doc. 14) and, pursuant to 28 U.S.C. § 1447(c), **REMANDS** this matter to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of subject matter jurisdiction. In addition, the Court **DENIES as moot** Caliber's Motion to Dismiss (Doc. 10) and Motion for Joinder (Doc. 25).[8]

**IT IS SO ORDERED.**
**DATED: October 14, 2009**

             s/ J. Phil Gilbert
             **J. PHIL GILBERT**
             **DISTRICT JUDGE**

---

[8] The Court declines to honor Richards' request for attorney fees under 28 U.S.C. § 1447(c). While this matter bears a strong resemblance to *Bourda* and *Miller*, the Court finds Caliber's reliance on the June 10 settlement agreement to provide sufficient distinction to the removal at issue. However, as Judge Murphy noted in his second order of removal, future improvident removal may warrant sanctions, including monetary ones.